## Foster *versus* Collner et al.

1. A bank discounting a note is an assignee of the maker who receives the proceeds, and therefore its stockholders come within the terms of the proviso to the Act of April 15th, 1869, and are incompetent to testify to matters which occurred during the lifetime of the deceased assignor.

2. In actions by or against executors and administrators, or where the assignor of the thing or contract is dead, an interested witness is not incompetent to testify to facts occurring or existing after the death of the decedent, although such testimony may inferentially tend to prove that the same facts existed prior to his death. But where such testimony of existing facts *necessarily relates to or tends to establish* facts which occurred in the decedent's lifetime, the witness is incompetent.

3. Where a note in suit is in the same condition at the trial, as at the death of the assignor, the assignee cannot testify that it is now partly in pencil.

4. Karns v. Tanner, 16 P. F. S. 297, followed. Rothrock v. Gallaher, 10 Norris 108, and Stephens v. Cotterell, 3 Out. 188, distinguished.

5. Where a promissory note is made to the joint order of two payees, it is immaterial which indorses it first. In such case the second indorser does not vouch for the genuineness of the first as in the case of several indorsements.

6. Under a declaration on a joint note against the two indorsers and payees jointly, there can be no recovery against one of the indorsers singly, although one indorsement ·is forged and the other indorser received part of the proceeds.

7. Where the defence to a suit on a promissory note is that the same was forged, it is irrelevant to ask an expert in what light he, as a banker, regards the note. His mere opinion, not based on particular facts pointed out to the jury, would be of no value and might mislead them.

8. Comparison of handwriting must be made ' by the jury, not by experts.

9. An equivocal answer by the court to a pertinent point is ground for reversal.

11 OUTERBRIDGE.—20

[Foster *v.* Collner.]

October 10th, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.  GREEN, J., absent.

ERROR to the Court of Common Pleas of *Clarion county :* Of October Term, 1884, No. 98.

Assumpsit, by J. R. Foster, cashier, in trust for the New Bethlehem Savings Bank, against W. F. Collner and Theo. S. Wilson, on a promissory note, of which Henry Weller was maker and the defendants were payees and indorsers.

On the trial, before KNOX, P. J., the following facts appeared : On December 3d, 1881, Henry Weller, now deceased, presented for discount at plaintiff's bank, a promissory note, made by him, dated November 28th, 1881, for $5,000, at four months, payable to the order of Theo. S. Wilson and W. F. Collner, at the New Bethlehem Savings Bank, and indorsed, " W. F. Collner," " Theo. S. Wilson." The note was discounted by plaintiff, who paid to Weller all the proceeds except $1,120, which was paid by a New York draft to the order of Theo. S. Wilson, one of the indorsers. At the maturity of the note, the maker, Weller, paid $500 and the discount on a renewal note which he then presented, dated March 31st, 1882, for $4,500, at four months, made by himself, payable to the order of W. F. Collner and Theo. S. Wilson, at the New Bethlehem Savings Bank, and indorsed, " W. F. Collner," " Theo. S. Wilson." This note was discounted by the bank in renewal of the first note, which was then surrendered to Weller. The second note, not being paid at maturity, was protested for non-payment, and this suit was brought, August 30th, 1882, against the indorsers.

The defendant, Wilson, admitted that he indorsed both notes. His name was written, in each instance, under that of W. F. Collner, and after it in point of time. The defendant, Collner, denied that he indorsed either note, and alleged that his name on each was forged.

The plaintiff called Manasseh Arnold, a stockholder in the bank, to prove the signature of W. F. Collner on the back of the note. Objected to as incompetent to testify to any thing which occurred during the lifetime of Henry Weller. Objection sustained. (First assignment of error.)

Plaintiff offered draft dated New Bethlehem, December 3d, 1881, on the National Park Bank, New York, for $1,120, payable to the order of Theo. S. Wilson, signed J. R. Foster, cashier, indorsed Theo. S. Wilson ; in order to show that part of the proceeds went to one of the defendants. Objected to on behalf of the defendant, Wilson, as irrelevant. Objection sustained. (Second assignment of error.)

William Pollock, a witness called for plaintiff, after testi-

[Foster v. Collner.]

fying that he had been a bank officer for twenty-five years, was handed the note in suit and asked: "Look at the face of that note, and state whether as a bank officer, if that note was offered for discount, there is or is not anything on its face of a suspicious character, that would cause you to distrust it?" Objected to by defendants on the ground that it was asking an opinion of the witness. Objection sustained. Exception. (Third assignment of error.)

Nathan Myers, called on behalf of the defendants, testified that he had been a cashier for ten years. An exhibit being shown the witness having upon it the signature "W. F. Collner," which Weller had sworn (in a deposition taken soon after suit brought) he wrote himself; also the first and second notes made by Weller having the indorsements "W. F. Collner"—witness was asked "whether the signatures on the two latter notes were written by the same person as the first signature, or were similar to the first signature?" Objected to by plaintiff on the ground that it would be allowing a comparison of hand-writing by the expert. Objection overruled. Exception. (Fourth assignment of error.)

In cross-examination plaintiff's counsel asked the witness Myers whether there was any thing on the face of the renewal note which would make him, as a bank officer, distrust it, if it were presented in his bank as a renewal note. Objected to by defendants. Objection sustained. Exception. (Fifth assignment of error.)

J. R. Foster, called in rebuttal, having sworn that he had ten years experience in judging hand-writing as a banker, was asked: "Look at this note, exhibit C., for $1,500, examine the face of it, and state whether the word 'fifteen,' in the line that reads 'fifteen hundred,' is in ink or in pencil." Objected to on the ground witness was interested, as a stockholder, in the plaintiff's bank, and could not testify as to matters relating to the case, which occurred during Weller's lifetime. Objection sustained. Exception. (Sixth assignment of error.)

The plaintiff submitted, inter alia, the following point:

"Even if the jury should find from the evidence that the defendant Collner cannot be held because of the alleged forgery, or of the fraudulent alteration of the note as to him, there may be a recovery in this suit against the defendant Wilson, if he indorsed the note in suit below the name of W. F. Collner, and after the name of Collner was written on the note; and especially would this be so, if Wilson was not a mere accommodation indorser, but participated in the proceeds of said note." Refused. (Ninth assignment of error.)

The defendants asked the court to charge:

[Foster *v.* Collner.]

" That if the note on which suit is brought was fraudulently raised by the maker after indorsement by Collner even if genuine, from fifteen hundred to forty-five hundred dollars, the verdict of the jury should be for the defendants." Answer. " As explained in the general charge, we answer that point in the affirmative." (Eighth assignment of error.)

In its general charge, the court instructed the jury, inter alia, as follows :

" Indorsers are bound simply to ordinary care and diligence. They are bound to protect their paper by simply ordinary care and diligence, and no more. If the writing in the face of the note and the blanks were filled in, and there were no spaces left, and the note was filled in with a lead pencil or an indelible pencil of such a nature that it would indicate the use of something permanent, or of ink—they are only bound to ordinary care—would that be ordinary care? Would not that be using diligence ?

" Take the circumstances of the case and the facts and apply that rule, and if you find there was a want of ordinary care in the issuing of this note by the indorsers—in other words, indorsing it, giving it credit, and returning it to Major Weller so he could have it discounted—under such circumstances showing that want of ordinary care—which is all that is required—then, gentlemen, they would be responsible to the New Bethlehem Savings Bank, although the note was raised." (Seventh assignment of error.)

Verdict for defendants and judgment thereon ; whereupon the plaintiff took this writ assigning for error, the admission and rejection of evidence, and the answers to points as above set out, and that part of the general charge of the court, cited.(

*John M. Thompson* and *B. J. & A. B. Reid* (with whom was *W. P. Jenks*), for plaintiff in error.—Arnold and Foster were excluded as interested witnesses on the ground that Weller, who died before the trial, was the "assignor of the thing or contract in action," and hence they were incompetent under the Act of 1869. But he did not assign to the bank, because he had no property in the note capable of assignment. It was not property in his hands, but simply evidence of indebtedness by him to the payees or their assigns. This case is not ruled by Karns *v.* Tanner, 66 Pa. St. 297, because neither party represents Weller's interests or claims his rights.

Foster was competent, as an expert in handwriting, to prove that at the time of the trial the word "fifteen" in the $1,500 note was in pencil, not in ink. The objection that such testimony would tend to establish inferentially that it

was not in ink prior to the death of Weller, as Collner testified it was, is effectually disposed of by Rothrock v. Gallaher, 10 Nor. 108, and Stephens v. Cotterell, 3 Out. 188. The testimony of Pollock and Myers, as bankers, was admissible under the rule that on a question of science, skill or trade experts are permitted to give their opinion : 1 Greenl. Ev. § 440. But the comparison of handwriting by Myers, as permitted by the court and complained of in the fourth assignment, was clearly error. Such comparison is exclusively for the jury : Travis v. Brown, 7 Wright 9 ; Aumick v. Mitchell, 1 Norris 211; Berryhill v. Kirchner, 15 Norris 489; Clermont v. Tullidge, 4 Carr. & Payne 1; Mutchinson v. Allcock, 1 Dowl. & Ryl. 165 ; Jackson v. Phillips, 9 Cowen 94. The general doctrine that if there are two payees both must indorse to pass title, is avoided by the special circumstances of this case. Wilson put his name to the note under that of Collner and after it in point of time; he thereby vouched to the world for the genuineness of his co-payee's and co-indorser's signature : Bank of United States v. Bank of Georgia, 10 Wheat. 355; Chambers v. Union National Bank, 28 P. F. S. 209; Weakly v. Bell, 9 Watts 273; McConeghy v. Kirk, 18 P. F. S. 200; Story on Prom. Notes § 135; Turnbull v. Bowyer, 40 N. Y. R. 456; Bank v. Caverly, 7 Gray 217; Dwight v. Pease, 3 McLean 94; Coggill v. Am. Exchange Bank, 1 Comstock 113. Wilson was the only real payee and indorser. The record and pleadings should have been amended to allow a judgment against Wilson alone : Fritz v. Heyl, 8 W. N. C. 374; Patton v. P. C. & St. L. Railway Co., 15 Nor. 169; Bolton v. King, 9 Out. 78.

*William L. Corbett & George A. Jenks* (with whom were *Wilson* and *Maffett & Ross*), for defendants in error.—Foster was the plaintiff in the action, and he and Arnold were members of the joint stock company or firm for the use and benefit of which this action was brought. Karns v. Tanner decided that the Act of 1869 was intended to reach, not simply cases where there was a literal assignment made by an assignor, but all cases, "where one of two parties to a transaction is dead, the survivor and party representing the deceased party, stand on an unequal footing as to a knowledge of the transaction occurring in the lifetime of the deceased. The enacting clause had opened the lips of all parties, but when death came it closed the lips of one, and evenhanded justice requires the mouths of both to be sealed." By the plaintiff's own evidence Weller was the party who procured the discount of the note in suit and received the proceeds of the discount. The defendants were not present, and did not

take any part in the transaction. The plaintiff and the parties interested in a recovery in such a case, are 'not competent witnesses against the estate of a deceased maker: Craighead *v.* McLoney, 99 Pa. St. 211. The cases cited to sustain the sixth assignment are not in point. The words "fifteen hundred," to which Foster's attention was called, were admittedly written prior to Weller's death and by Weller himself. Both of the cases cited refer to acts done after the death of the party. As to the third and fifth assignments, Myers and Pollock were not asked to state facts. They were asked if there was anything of a suspicious character on the face of the note that would cause them or a banker to distrust it. What they as bankers would do was immaterial. It was competent for them to give their opinion as to what the facts actually were, so far as their superior skill as experts enabled them to do; the opinion should be conclusions from particular facts: Wharton's Evidence, § 440, &c.

The facts relative to the point raised by the fourth assignment do not bring it within the rule of the cases cited. The note Myers was asked to compare with the note in suit and the $5,000 note was Exhibit "D." admitted not to be the handwriting of Collner. The evidence was entirely competent: Ballentine *v.* White, 77 Pa. St. 20; Reese *v.* Reese, 90 Pa. St. 89. Myers was not an expert as to Collner's signature because he had a knowledge of his handwriting: Travis *v.* Brown, 7 Wright 9. Where joint payees hold a note they must jointly indorse to transfer title; and it is immaterial which name is first indorsed on the paper: Lane *v.* Stacy, 8 Allen 41. Joint debtors must be jointly sued and a joint liability established: Robertson *v.* Smith et al., 18 Johnson's R. 479 and 481. A material alteration in a note after the indorsement will discharge the maker and the indorser: Hepler *v.* The Mount Carmel Savings Bank, 1 Out. 420; McSparran, Adm'r *v.* Neeley, 91 P. S. R. (10 Norris) 25; Neff *v.* Horner, 63 P. S. R. (13 P. F. S.) 330; Brown *v.* Reed, 78 P. S. R. (29 P. F. S.) 370. In form the contract was between plaintiff and defendants, and he was clearly bound to know both signatures of the indorsements were genuine.

Mr. Justice PAXSON delivered the opinion of the court, January 5th, 1885.

The first and sixth assignments involve the same principles and may be considered together. Each of the witnesses was interested in the result of the suit, and the court excluded their testimony for the reason that Henry Weller, the maker of the note in controversy, was dead at the time of the trial. Weller was the person who procured the note to be discounted

[Foster v. Collner.]

by the bank and received the proceeds. He was not technically and literally the assignee of the note, but we think the case comes within the spirit and meaning of the Act, as it clearly does within the ruling in Karns v. Tanner, 16 P. F. S. 297, where it was said: "Where one of two parties to a transaction is dead, the survivor and the party representing the deceased party, stand on an unequal footing as to a knowledge of the transaction occurring in the lifetime of the deceased. The enacting clause (Act of 1869), had opened the lips of all parties, but when death came it closed the lips of one and evenhanded justice required the mouths of both to be sealed." While the court below excluded the testimony of these witnesses as to events which occurred prior to Mr. Weller's death, permission was at the same time given to introduce by the same witnesses anything which took place since that time. It was contended for the plaintiff that even if the witnesses were incompetent to speak of events occurring in Mr. Weller's lifetime, yet that the witness Foster was competent to prove, as an expert in handwriting, that at the time of the trial the word "fifteen" in the $1,500 note admitted to have been indorsed by Collner, was in pencil, not in ink. But this testimony was not as to something occurring after the death of Weller; it was as to a fact existing in his lifetime. There was no pretence that the note was not precisely in the same condition at the trial as it was before the death of the maker. Hence, we do not think the case comes within the ruling of Rothrock v. Gallaher, 10 Norris 108, and Stephens v. Cotterell, 3 Out. 188, in which it was held that in actions by or against executors or administrators an interested witness is not "incompetent to testify to any fact occurring or existing after the death of the decedent, by reason that his testimony may inferentially tend to prove the same facts existed prior to his death." But when we examine those cases we find that they do not sustain plaintiff's contention. The first case was an action of trover and conversion brought by the executors of Robert Gallaher, deceased, against Jane Gallaher, widow of the testator, for certain United States bonds, which it was alleged belonged to her husband's estate, and which she had converted to her own use. On the part of the defence, it was proposed to ask Jane Gallaher, the defendant, whether the package, when opened, was in the same condition that it was in from and immediately after the death of her husband. The court below allowed this question to be asked and this court sustained the ruling. This, it will be seen, referred to a fact actually existing after the testator's death and having no relation to any fact existing prior to his death except by implication. But in the case in hand the question

involved the condition of the note in the lifetime of the maker. If competent to prove that the word "fifteen" was in pencil, I see no reason why the witness was not competent to prove the signature a forgery and thus destroy the note. The expression any fact "existing" after the death of the testator, must be understood with the qualification that where the existing fact merely tends to prove by implication that the same or a similar state of facts existed prior to the death of the testator, the witness is competent, but where it appears that the testimony necessarily relates to that which existed or took place in the testator's lifetime, the witness is incompetent.

In Stephen's Admr's *v.* Cotterell, it became important to prove that the plaintiff took possession of the property in dispute after the death of the intestate, and on or about the date of the appraisement. This was a fact occurring after the death of the intestate, and this court held that the plaintiff was a competent witness to prove it, although its tendency might be to prove the same state of facts existed prior to the death of the decedent. As was well said in the opinion of the court: "It was entirely competent to prove, as bearing on both positions contended for by the defendant, where the property was found, and in whose possession at the time the administrators, as such, took possession thereof."

We are of opinion that the testimony was properly excluded. We see no error in the rejection of the evidence referred to in the second assignment nor to the refusal of the plaintiff's second point as contained in the ninth assignment. The note in suit was made to the joint order of the defendants, W. F. Collner and Theo. S. Wilson, and by them indorsed. It was therefore a joint indorsement; an indorsement by either without the other would have passed no title to the note. The declaration was properly against them jointly and there could have been no recovery against one of the indorsers singly. It was not error, therefore, to reject the evidence offered to show that Wilson received a portion of the proceeds of the note; nor to the refusal of the point that "even if the jury should find from the evidence that the defendant Collner cannot be held because of the alleged forgery, or of the fraudulent alteration of the note as to him, there may be a recovery in this suit against the defendant Wilson, if he indorsed the note in suit below the name of W. F. Collner, and after the name of Collner was written on the note; and especially would this be so if Wilson was not a mere accommodation indorser, but participated in the proceeds of said note.

The vice of the argument on this branch of the case consists in the fact that no significance is to be attached to the relative

[Foster v. Collner.]

position of the indorsements upon the note. Had they been separate indorsements, the argument would have had some force and the authorities cited some application; but, as before said, the indorsement was joint, not several. Of course, one name had to be written under or above the other; they could not occupy the same space, but it was immaterial which name was written first, and as a matter of law, neither is presumed to have any priority over the other.

The plaintiff admits that but for the power of amendment there could be no recovery under the pleadings against Wilson alone. No motion to amend was made in the court below, and it would be vain to amend here, for the reason that the plaintiff has a verdict against him. Had he obtained a verdict below, and it became necessary to amend in a matter of form to sustain it, we might consider the propriety of doing so; but an amendment now would do him no good; it could not give him a verdict. The case would have to go back for a re-trial. As the judgment must be reversed, however, for other reasons, the plaintiff will still have the opportunity to ask permission of the court below to amend if he elects to go against Wilson alone.

The defect in the offers of evidence contained in the third and fifth assignments consists in the fact that the expert was asked in what light he, as a banker, would regard the note. This can be best illustrated by stating the question objected to. It was this: "Look at the face of that note and state whether, as a bank officer, if that note was offered for discount, there is or is not anything on its face of a suspicious character that would cause you to distrust it?"

What the witness would do, as a bank officer, had the note been offered to him for discount, was irrelevant. So was his mere opinion that the face of the note was of a suspicious character. He was not asked to testify as to any particular fact. It was competent for him to point out any irregularity upon the face of the note; any fact tending to show that it had been tampered with, and the jury would then have had something to base a verdict upon. But a mere opinion, not based upon particular facts pointed out to the jury, was of no value, and might have misled them.

We are compelled to sustain the fourth assignment. The defendants called Nathan Myers, an expert, to the stand, and he was permitted, against the objection of the plaintiff, to testify by a comparison of three separate papers that they were all written by the same person. This was in direct conflict with Travis v. Brown, 7 Wright 9; Aumick v. Mitchell, 1 Norris 211, and other cases which have followed them, and which distinctly hold that evidence by comparison

of handwriting is not allowed as independent proof, and that the comparison must be made by the jury, not by experts. We need not elaborate this point; it is too plain.

It remains but to consider the seventh and eighth assignments. We are unable to see any error in the answer to the defendants' third point (eighth assignment), considered as an abstract proposition. But in its application to the facts there was the question of negligence in the filling up of the note. Hence the learned judge affirmed it " as explained in the general charge." And the seventh assignment alleges error in that part of the general charge. It is in these words : " Indorsers are bound simply to ordinary care and diligence. They are bound to protect their paper by simply ordinary care and diligence, and no more. If the writing in the face of the note and the blanks were filled in, and there were no spaces left, and the note was filled in with a lead pencil, *or* an indelible pencil of such a nature that it would indicate the use of something permanent, or of ink—they are only bound to ordinary care—would that be ordinary care ? Would not that be using diligence ?

" Take the circumstances of the case and the facts and apply that rule, and if you find that there was a want of ordinary care in the issuing of this note by the indorsers—in other words indorsing it, giving it credit, and returning it to Major Weller so he could have it discounted—under such circumstances, showing that want of ordinary care, which is all that is required, then, gentlemen, they would be responsible to the New Bethlehem Savings Bank, although the note was raised."

The plaintiff had also called the attention of the court to this question. His first point was framed for the purpose of getting an instruction, that even if the note had been raised, yet if the plaintiff had discounted it in good faith, and the evidence satisfied the jury " that when said Collner indorsed the note, the amount was not filled out on the face of the note, *or was filled in pencil*, or in any way that it could be changed or raised," the plaintiff was entitled to recover. The court affirmed this point also "as explained in the general charge," and the portion of the charge I have above quoted is that which refers to this point.

The attention of the court was thus distinctly called to the effect of filling up the blank in the note with a lead pencil, as bearing upon the question of negligence in a case where one of the grounds of defence was that the note had been raised. The answer of the learned judge was not clear, and in our judgment, was misleading. He evidently intended to instruct the jury that it was for them to say whether the use

of a lead pencil, under the circumstances, was negligence, but the phraseology was unfortunate and may have misled them. The reference to the lead pencil in the disjunctive, followed immediately by the allusion to the indelible pencil, accompanied with the query, "would *not* that be using diligence?" may well have led the jury to believe that the one was the equivalent of the other. The effect was substantially as if the learned judge had said : "If you believe the blank was filled in with a lead pencil, would not that be using diligence?" In the most favorable view it was an equivocal expression, where the jury should have had a clear instruction, and it may have controlled the verdict.

Judgment reversed, and a venire facias de novo awarded.