# Groff *v.* Groff, Appellant.

209   603
41SC⁵178

*Evidence—Proof of signature—Subscribing witness—Experts.*

In an action on a promissory note where the issue turns on the genuineness of the signature of the maker, the case must be submitted to the jury if one of the subscribing witnesses testifies positively that he saw the maker sign his name, and that he and the other subscribing witness signed their names as witnesses.

In an action on a promissory note where the issue turned upon the genuineness of the signature of the maker, several witnesses, not experts, testified that from frequent sight of the maker's signature, they were able to tell it when they saw it. They were then shown the note in dispute, and asked whether in their opinion it was the signature of the maker; to which they generally answered that they did not believe it was his signature. On cross-examination counsel placed a paper on which was written the name of the maker inside of an envelope, but so that through an aperture cut in the envelope, the entire name could be plainly seen. The witnesses were then asked whether the signature was genuine. Quite often it was shown that the witnesses were mistaken. None of the witnesses limited the scope of their knowledge to a signature as appended to a note or check or other document. *Held,* that the method of cross-examination pursued was not improper.

There is no rule of evidence which prohibits the use for comparison of a genuine lead pencil signature.

Comparisons of genuine signatures with an alleged spurious signature are for the jury, and not for nonexpert witnesses. Expert witnesses are permitted to make comparisons under the Act of May 15, 1895, P. L. 69.

*Evidence—Witnesses—Expert witness—Competency of witness.*

A party cannot complain of the rejection of the evidence of a person called as an expert, where the testimony of the alleged expert himself leaves it doubtful whether he was qualified to act as an expert.

*Evidence—Expert—Comparison of signatures—Act of May 15, 1895, P. L. 69.*

There is nothing in the Act of May 15, 1895, P. L. 69, which permits an expert witness to write a copy of a disputed signature upon a blackboard, and then by alleged copies of authentic writings institute a comparison between them and the copy of the alleged forged signature. The act only authorizes expert comparison and opinion of genuine signatures and disputed signatures when they are placed in juxtaposition.

*Interest—Province of court and jury.*

In an action upon a promissory note where the genuineness of the signature was disputed, it is not error for the court to charge that if the jury should find the signature to be genuine their verdict should be in favor of the plaintiff for a sum stated, which sum was made up of principal and interest.

Argued May 17, 1904.   Appeal, No. 222, Jan. T., 1903, by plaintiff, from judgment of C. P. Lancaster Co., Aug. T., 1899, No. 82, on verdict for plaintiff in case of Maria Groff v. Abram E. Groff and Wayne I. Groff, executors of Solomon C. Groff, deceased.   Before MITCHELL, C. J., DEAN, FELL, POT-TER and THOMPSON, JJ.   Affirmed.

Assumpsit upon a promissory note.   Before BUTLER, J., specially presiding.

At the trial the issue turned largely upon the question of the validity of the signature to the note in suit.   When James Diller, a witness for defendant, was under cross-examination, he was asked this question :

" Q. I offer to show the witness a signature, to be marked ' W. B. No. 1,' purporting to be—that is, the name is ' Solomon C. Groff,' and to ask him whether or not, in his judgment, and from the basis from which he has testified in the other case, he is able to say, whether or not, that is Solomon C. Groff's genuine signature."

Mr. Davis : What I want to know, your honor, is, whether that is a signature seen through a slip cut on an envelope, or whether it is pasted on the outside of the envelope ?

Mr. Hensel : It is a signature on a paper which paper is in the envelope, and the signature and no other part of the paper is seen through the aperture.

Mr. Davis : Now, I object to that.

Objection overruled.   Defendants except.   Bill of exceptions signed, sealed and filed for the defendants. [1]

Objections to similar questions in cross-examination were made as to other witnesses. [2–8]

Mr. Hensel : I offer the paper, " W. B. No. 9," signature of Solomon C. Groff, which was identified by Curtis Miller.

Admitted. . . .

Mr. Davis : Out of abundant caution, as some of these test papers which were admitted were written in pencil, we want an objection and exception.

The Court : Yes, sir.   All right, sir.

Mr. Davis : Let us see what papers they are.

Mr. Hensel: " W. B. No. 9."

Bill of exceptions signed, sealed and filed for the defendants. [9]

Mr. Davis: Now, if the court please, I would make, as an offer, to show the signature to the will of the late Solomon C. Groff to this witness, being a test paper already admitted in evidence, and ask her, by comparison, to explain the differences in the two signatures.

The Court: Well, do you offer this witness as an expert on handwriting?

Mr. Davis: No, I don't offer her. .

The Court: There isn't any doubt but that the witness, on cross-examination, in order to test his accuracy, may have all sorts of signatures presented to him; but that you, in chief, may have him make a comparison, the jury is not aided by it, because it is just as competent to make it as the witness. . . .

Offer disallowed. Defendants except. Bill of exceptions signed, sealed and filed for the defendants. [10]

Webster A. Melcher, a witness for defendants, was asked this question:

"Q. In your judgment, which handwriting wrote the name of 'Solomon C. Groff' to the note in suit?"

Objected to by the plaintiff, because he has not testified that either of them did.

The Court: We understand that; but he is asked now.

Mr. Hensel: Which of those two?

"Q. If any, if either."

Objected to by the plaintiff because he has only made a casual examination.

The Court: Well, that is the point.

Mr. Hensel: That is the objection, as the question is now amended.

The Court: It seems to me that expert testimony is received as a matter of necessity, the courts recognize that—it is opinions—and it is not too much to ask, before an expert expresses an opinion, that he shall have exhausted every reasonable effort to be certain of the premises, and, in view of what the witness has said, I don't think it would be right to admit his answer to that question. He has admitted, distinctly, that he has not made, at all, such an exhaustive examination as he might have made, and an opinion is certainly proper and receivable only

when the person giving it has made every reasonable effort to prepare himself to give it intelligently. For those reasons, we sustain the objection and note an exception, if you desire.

Defendants except. Bill of exceptions signed, sealed and filed for the defendants. [11]

Rauch Gihon was offered to write on the blackboard a signature of the maker of the note.

The Court: In the very nature of things, she can't reproduce accurately. No living being could.

Mr. Davis: It isn't for that purpose, your honor. It is for the purpose of getting the characteristics of the handwriting.

The Court: I understand the witness to say that her effort is—as it apparently is—to reproduce on that board an exact similitude, so far as she can.

Mr. Denlinger: As nearly as possible.

The Court: Well, that she can't do, at all. It isn't possible for her to do it.

Mr. Davis: She is reproducing those signatures as nearly correct as it is possible for her to do, for the purpose, if the court please, of illustrating, by the writing on the board, her testimony as she will give it in relation to those genuine signatures.

The Court: In the case of the other witness here, the signatures, as he contended, represented the characteristics. He presented, I say, a signature, the name, that was intended, as he claimed, as he testified, to show the peculiarities that amounted to characteristics, as gathered from all the test papers. That we permitted him to do. . . . But it is going very much further to permit this witness to produce what she called a reproduction of something that exists, and to produce it by her. Now, we don't propose to have that done in the presence of the jury, because, no matter what the purpose of it is, it is denied you, it being misleading. The comparison ought to be, so far as it is a purpose to compare the genuine with that which is said not to be, between those two facts, and those facts alone, and not something that is on the blackboard.

Mr. Davis: If the court please, we will simply ask the witness to give the characteristics of the test signature.

The Court: We simply rule now, in view of what we have said, that we will not permit any use to be made, of any kind,

nor to be exhibited to the jury, those names on that blackboard, and they might just as well be rubbed off now.

Mr. Hensel : I ask that they be erased and the blackboard be removed.

Defendants except. Bill of exceptions signed, sealed and filed for the defendants. [12]

The Court : No, I don't say that the blackboard be removed ; but I say that those names be rubbed off.

Mr. Hensel : Well, that is all I care for. I ask now that somebody be directed to erase.

The Court : Somebody just erase those names.

One of the tipstaves erases the names from the blackboard.

Defendants now offer to show, by the witness on the stand, Anna R. Gihon, enlarged copies of signatures of Solomon C. Groff, deceased, as made by her on the blackboard, of test papers, or some of them, admitted in evidence, and also an enlarged copy of the signature to the note in suit, for the purpose of enabling her to explain to the jury the different characteristics of the genuine signatures and disputed signature.

Objected to by the plaintiff.

The Court : Disallowed. . . .

Defendants except. Bill of exceptions signed, sealed and filed for the defendants. [13]

The court charged in part as follows :

[You will not render your decision hastily, but only after due and anxious deliberation, by a most thorough and exhaustive examination and consideration of all of the evidence, recalling, as far as you can, the manner of each witness on the stand, his apparent ability and inclination, or otherwise, to give you accurate information, regarding the presence or absence of any interest that might result in bias,—I say, by this process, by this character of investigation, you will determine whether it is established, by fairly preponderating proof, that the signature to the note in suit was written by Solomon C. Groff. If it is not, your verdict will be for the defendants, and you will so announce. If it is established that Solomon C. Groff signed the note in suit, then your verdict will be in favor of the plaintiff for $4,800.] [15]

Verdict and judgment for plaintiff for $4,800. Defendant appealed.

*Errors assigned* were (1–15) rulings on evidence, quoting the bill of exceptions ; (15) above instruction, quoting it.

*B. F. Davis*, with him *J. W. Denlinger*, for appellant.— Where a witness has testified that he is familiar with a person's handwriting, it is not permissible, on cross-examination, to test his knowledge by showing to him other papers irrelevant to the case and asking of him his opinion as to their genuineness : Andrews v. Hayden, 88 Ky. 455 (11 S. W. Repr. 428) ; Massey v. Farmers' National Bank of Virginia, 104 Ill. 327 ; Bacon v. Williams, 79 Mass. 525 ; Howard v. Patrick, 43 Mich. 121 (5 N. W. Repr. 84) ; Pierce v. Northey, 14 Wis. 9 ; Tyler v. Todd, 36 Conn. 218 ; Van Wyck v. McIntosh, 14 N. Y. 439 ; Bank v. Mudgett, 44 N. Y. 514.

Letter press copies of letters are not competent to establish a standard for comparison of handwriting : Cohen v. Teller, 93 Pa. 123.

Comparison may be made by the jury between the disputed signature and those of the party well authenticated, and, also, by witnesses who have knowledge of. his handwriting, but this rule does not extend to experts : Ulmer v. Gentmer, 3 Penny. 455 ; Bank of Pennsylvania v. Haldeman, 1 Penrose & Watts, 161; Foster v. Collner, 107 Pa. 305; Aumick v. Mitchell, 82 Pa. 211; Haycock v. Greup, 57 Pa. 438.

An expert testifying as to handwriting may make use of blackboard illustrations for the purpose of illustrating and explaining his testimony : Hagan v. Carr, 198 Pa. 606.

It was the province of the jury to fix the amount of the interest, and not that of the court; the jury should find when it begins to run and when it quits running, and they can even go so far as to determine whether any interest should be allowed or not: Eckert v. Wilson, 12 S. & R. 393; Uhland v. Uhland, 17 S. & R. 265.

*W. U. Hensel*, with him *M. G. Schaeffer*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 10, 1904 :

This suit in the court below was on a note under seal dated March 3, 1898, payable one day after date in the sum of $3,700 with power of attorney to confess judgment. The note pur-

ports to be drawn by Solomon C. Groff in favor of his son's wife Maria Groff. Solomon C. Groff being dead the daughter-in-law brings this suit against his executors to recover the amount with interest. They plead non assumpsit and non est factum. This issue really turned almost wholly on the latter plea. Much evidence was introduced by the defendants to sustain this plea and considerable by plaintiff to establish the genuineness of the instrument. This evidence was submitted to the jury and they found for plaintiff. We now have this appeal by the defendants who assign nineteen errors, fourteen to rulings on admission or rejection of evidence and five to instructions to the jury.

Before adverting to the evidence of the expert and nonexpert witnesses who testified with more or less positiveness to the genuineness or falsity of the signature, we notice first, the direct evidence as to what occurred, as alleged by plaintiff at the execution of the note. There are two attesting witnesses to it, Nathan Groff and G. F. Groff. One of them, G. F. Groff, is the husband of Maria Groff, the plaintiff, and Solomon C. Groff being dead is therefore incompetent; the other, Nathan Groff, is her son and not disqualified, and was called as a witness by her. He testified he was thirty years old and that he saw the note signed by Solomon C. Groff, his grandfather. The paper then being placed in his hands, he testified as follows: " Q. Is that your name? A. Yes, sir. Q. Did you write it? A. Yes, sir. Q. Whose name is underneath your name? A. G. F. Groff, my father. Q. Who is G. F. Groff? A. My father. Q. State whether or not you saw your father, George F. Groff, write his name there as a subscribing witness. A. Yes, sir. Q. Now, I ask you to look at the signature, 'Solomon C. Groff,' and state to the jury if you saw him write that name. A. Yes, sir. Q. Who wrote the name there, 'Solomon C. Groff'? A. Solomon C. Groff. Q. State whether or not you witnessed that paper at the time he wrote it. A. Yes, sir. Q. Where was that done? A. In the kitchen. Q. Of whose house? A. Our house."

This witness was subjected to a most thorough cross-examination which in no respect served to shake his statement in chief, therefore no matter how doubtful in itself might be his testimony, or how doubtful it might be made to appear sub-

sequently in the trial by the opinions of other witnesses, as to the falsity of the signature, his truthfulness had to be determined by the jury. If they believed him, that was an end of defendants' case; for if the court below did not help them by a new trial we cannot do so here by finding a wholly different fact. We have not even an inclination to do so. We make these remarks simply because we do not care to follow the learned counsel for appellant in his argument wherein he makes so vigorous an assault on the credibility of this witness.

The assignments of error as to rulings on offers of evidence are altogether independent of the testimony of the attesting witness, for putting him out of the case entirely it would have been possible to sustain the note or establish it to be a forgery on the opinions of competent witnesses as to the genuineness or spuriousness of the signature. There was much evidence of this character on both sides. The first eight assignments raise the substance of appellant's complaint as to the court's rulings on the evidence. A number of witnesses testified on behalf of defendants, that they had known Solomon C. Groff, were familiar with his signature and would know it when they saw it; they then, in most cases, stated particularly their opportunities for becoming familiar with the signature and that they could form a judgment as to the genuineness of it from their knowledge of it; they did not pretend to testify as experts but as men who from frequent sight of his signature were able to tell it when they saw it. After thus qualifying themselves to give an opinion, counsel for defendants would place before the witness the note in dispute, followed by this question, "What is your opinion and belief as to that signature?" followed generally in substance by the witness's answer, "I don't believe that is his signature." Then, on cross-examination, counsel for plaintiff declaring his purpose to test the extent of witness's ability to form such a judgment as he professed to possess, exhibited to him a paper on which was written the name "Solomon C. Groff" which was placed inside an envelope, but so that through an aperture cut in the envelope the entire name could be plainly seen, and asked, "In your judgment is that Solomon C. Groff's genuine signature?" Sometimes the witness answered it was, and at times that it was a forgery. Quite often it was shown the witness was mis-

taken.   Counsel for defendant strenuously objected to the method of cross-examination as unfair to the witness, because he was not called as an expert in handwriting but only as one familiar with the signature of Solomon C. Groff, and as such a witness he was entitled to have placed before him the whole paper containing the signature.   This would have been a good objection if the witness's knowledge had been limited to a sight of the signature on a check, bill, note, bond or other such writing; the jury would have known that his familiarity with the signature was not thorough, but limited, and would have given it weight accordingly.   But notice the scope of the witness's knowledge as stated by himself.   That he might not misunderstand, the court itself in one instance put the question thus :   " Do you understand the question ?   Have you such a knowledge of this decedent's handwriting, that on being presented with a signature purporting to be his you could say on sight whether it is his or not?   That is the question. *Answer*.   Yes sir, I could form a judgment."   In every other instance either the counsel or the court put before the witness substantially the same question when the isolated name "Solomon C. Groff " was placed before the eyes of the witness. From the mistaken answers it is clear that in most cases the witness had no such extensive or thorough knowledge of the signature as he professed.   This was not untruthfulness, but to use a common term, it was only because many of the witnesses thought themselves " smarter" than they really were; but there was no deception or unfairness, as argued, in this method of cross-examination when the real purpose is considered.

If the witness had answered, " I could distinguish the signature if I saw it appended to a note or check or other document, but standing by itself I could not be sure," the court would doubtless have sustained the objection of defendants' counsel, but as the record stands, we see no error in the court's rulings. The authorities cited by counsel for defendants in view of the examination in this case are without application.   The opinion of Judge COOLEY in Insurance Co. v. Throop, 22 Mich. 146, itself shows the distinction between most of the cases and the one on hand.   He says :   " A man may recognize even a casual acquaintance, his whole person, size, height, carriage, peculiar-

ities of deportment may be observed, when if he were compelled to judge by a single feature, or even by a view of the whole face, he might easily be deceived in consequence of his missing something on which his recognition in part depended. Any examination based on such a partial view might be useful, if entrapping the witness were the purpose to be accomplished." But the object here was not to entrap the witness but to ascertain the existence of a most important fact; there was not a single letter on the note written by the maker except his signature, therefore that signature must determine the witness's ability to testify with a reasonable degree of certainty, for he in effect had said he had such ability. Every single feature of it appeared in the specimen presented to the witness and from his own statement he was competent to judge from the written name alone whether it was genuine or false. By the assumption of such thorough knowledge, a knowledge which few men care to assume, even in respect to their own handwriting, the witnesses fairly subjected themselves to the searching cross-examination complained of. In the cases cited not one of the witnesses professed such ability as these witnesses. In the case referred to, the witness demanded to see the whole writing, an insurance application, before he would testify to his own signature. We see no merit in the first eight assignments of error and they are overruled.

The ninth assignment that it was error to permit the use of an admittedly genuine lead pencil signature as a standard of comparison is also overruled. First it is denied that the signature was made with a pencil; it is alleged that it is in what is called indelible ink; but assume that it was in pencil, there is no rule of evidence that we are aware of, which prohibits the use for comparison of a genuine lead pencil signature.

As to the tenth assignment, from Travis v. Brown, 43 Pa. 9, to Foster v. Collner, 107 Pa. 305, without a break, we have held that comparison of genuine signatures with the alleged spurious signature, are for the jury. Even as late as Rockey's Estate, 155 Pa. 453, speaking by our Brother THOMPSON, present justice, we held that comparisons were for the jury alone, that even experts could not make them. Less than two years afterwards, the act of 1895, supra, was passed permitting besides the jury expert witnesses to make comparisons. This

sufficiently sustains the rulings of the learned trial judge as to nonexpert witnesses.

The eleventh assignment relates to the testimony of W. A. Melcher called by defendants. Undoubtedly this witness was qualified to testify as an expert and the court excluded part only of the testimony sought to be elicited from him, but what part? He had studied, analyzed and compared the signature of Solomon C. Groff on the note with specimens of his admittedly genuine signature; it followed that he was qualified to express an opinion as to Groff's signature. But then in the course of his examination the witness was asked to express an opinion as to whether the signature had not been written by another person whose name was on the note or who had filled in part of the writing in the note. He had made only a partial examination of this person's writing, had not analyzed nor critically examined it. It was objected to by plaintiff's counsel because he had not sufficient knowledge as an expert to testify as to this third person's writing, although he could testify to the disputed signature. The trial judge sustained the objection. This is objected to as error. A careful reading of this witness's testimony does not leave the correctness of the exclusion free from all doubt; from what he said himself as to his competency, it is very clear that in his opinion he was not competent, but from the examination he states he made, it is not so clear that he was incompetent. Nevertheless as counsel calling the witness was bound to clearly satisfy the court of his competency, we think he failed to come up to the measure of proof required to qualify him as an expert and there was no error in excluding the rejected testimony.

The twelfth and thirteenth assignments complain that an expert witness called by defendants was not permitted to write a copy of the disputed signature upon a blackboard and then by alleged copies of authentic writings institute a comparison between them and the copy of the alleged forged signature. None of the cases prior to the act of 1895 nor that act itself authorize such a method of comparison. The act only authorizes expert comparison and opinion of genuine signatures and disputed signatures when they are placed in juxtaposition; there was no attempt to so place them by the expert; she sought only to place simulations of genuine signatures with a simula-

tion of the disputed signature in juxtaposition on the blackboard. She might illustrate her thought or meaning by any kind of a diagram or writing on the blackboard, but this would not be a comparison of the genuine with the forged signature as was attempted by this expert and claimed to meet the requirements of the act, for all the signatures were simulated. How far and what shape an examination of an expert may take and still be within the terms of the act we will not now undertake to say; we only say that this method was not placing the genuine and disputed signatures in juxtaposition. It is argued that this leaves the standard of comparison to be determined by the personal views of the trial judge; this is in great measure true, and so it ought to be. He in most cases is more competent to judge correctly in such a matter than we; he presides in the court room where the expert with his blackboard and chalk makes his illustrations and diagrams and can at once correctly decide whether he is making a comparison of genuine and alleged spurious signatures such as intended by the act or is going outside the case to picture an expert's fancies.

The fourteenth assignment is wholly groundless. The fifteenth assignment complains that the court instructed the jury that if they found Solomon C. Groff made the note they should allow plaintiff interest. This was clearly correct; if they found the note genuine, they then found a debt due and payable as if of the day of its date; the law then fixed that lawful interest was payable; even if the jury had not added interest the court could have done so after they brought in their verdict. It is true, where damages for the exercise of the right of eminent domain are awarded, interest is generally in the discretion of the jury; and so in some cases of trespass, but on a debt past due and payable evidenced by contract, interest is demanded as of right.

The remaining three assignments have no merit warranting notice.

All the assignments of error are overruled and the judgment is affirmed.