Commonwealth v. Zeid

*W. Louis Coppersmith,* Assistant District Attorney, for Commonwealth.

*Caram J. Abood* and *John M. Scales,* for defendant.

GRIFFITH, P. J., November 2, 1964.—On June 11, 1964, defendant was convicted by a jury on three bills of indictment charging fraudulently making and uttering written instrument. On July 5, 1963, three checks, each in the amount of $157 and each drawn on Pittsburgh National Bank on the account of the Western Pennsylvania Teamsters and Employers Pension Fund with Bernard Puzas as payee were cashed in the City of Johnstown, one at the A & P Market on Southmont Boulevard, another at the Thorofare Market on Southmont Boulevard directly across the street from the A & P Market and the third at the Acme Market at Broad Street and Delaware Avenue. There is no dispute that all three checks and the endorsements thereon were forgeries and in each instance defendant was identified by an employe as the person who cashed the checks. Although the employes of the markets each made a positive identification of defendant, defendant testified that he was at his home in Monroeville, Allegheny County, Pennsylvania, at the time of the alleged crimes. He also called a witness, Edward Zambo, who said he telephoned defendant at his home on the afternoon of July 5th and recognized his voice. This witness also testified that in July, 1963, defendant walked with a limp and used a cane. A county detective from Westmoreland County also testified as to the limp and the use of a cane. The witnesses for the Commonwealth in these cases said they did not notice a limp nor the fact that defendant carried a cane except that one witness did testify that he walked with a "shuffle".

The Commonwealth witnesses had testified that defendant endorsed the three checks in their presence and defendant submitted his handwriting samples to

compare with the handwriting on the endorsements of the checks. One of the handwriting samples offered by defendant was excluded from evidence, it being his membership card in the Moose Lodge.

At the oral argument, defendant's counsel agreed that his motion in arrest of judgment should be dismissed but contended that defendant is entitled to a new trial for a number of reasons.

1. First, that the trial judge refused to sequester the three identification witnesses produced by the Commonwealth. The only thing in common with the testimony of these three witnesses was that each identified defendant as the person for whom he cashed a check. Each was testifying to a different transaction which occurred in a different market at a slightly different time on the same date. The only reasons advanced by defendant at the trial for sequestration was "that perhaps one's imagination would be revived in the event an identification was made by one" and "we are fearful that identification by the first, for instance, would bolster the courage of one who perhaps was not sure." We are satisfied that under the circumstances the sequestration of the three identification witnesses offered by the Commonwealth was not required.

In Commonwealth v. Kravitz, 400 Pa. 198, 217, the court said:

"In nearly every criminal and civil case, one side or the other would like to have some or all of the witnesses of his opponent sequestered. The lack of adequate room space, the long delays which would inevitably be caused by sequestration and other practical considerations, make sequestration of witnesses ordinarily impracticable or inadvisable, except in unusual circumstances."

In the same case and on the same page in the footnote, the court said that a request for sequestration should be specific and should be supported by reasons

demonstrating that the interests of justice require it. Defendant's reasons for sequestration suggested no such unusual circumstances.

2. Defendant contends that the court erred in refusing defendant's motion for a continuance. The Grand Jury found a true bill on one indictment September 4, 1963, and on the other two indictments on December 3, 1963. The cases were listed for trial in December, 1963, and in March, 1964. Defendant failed to appear on either occasion. Since jury trials in criminal cases are held only in the months of March, June, September and December, these cases were again listed for trial for June term, 1964. Defendant's bonding company had been notified of the date of trial three weeks prior thereto and defendant does not contend that the bonding company failed to notify him. Although defendant was represented by the same Westmoreland County lawyer in similar cases which had been tried in Greensburg the week before, he appeared in Cambria County without counsel on June 8, 1964, the trial date. As a result local counsel was appointed for him shortly before his cases were called for trial. A motion for continuance to the September term, 1964, was refused in view of these circumstances. However, the case was continued to June 9th. At the time of the noon recess on June 9th, at the request of local counsel and after hearing one witness for the Commonwealth, the case was continued until June 10th, at which time counsel from Westmoreland County appeared and represented defendant throughout the trial together with local counsel. There was no contention whatever that defendant was not possessed of ample financial means to employ counsel at any time and if counsel was not thoroughly prepared to represent him this was solely the fault of defendant.

Defendant contends that if a continuance had been granted he would have been able to obtain a handwrit-

ing expert who would have testified that the endorsements made by the person who cashed the three checks in question in Cambria County were not in his handwriting. This case was argued on August 24, 1964. At that time the court told defense counsel that the decision on his motion for new trial would be deferred so that he might submit the checks in question together with samples of defendant's handwriting to the Federal Bureau of Investigation or other handwriting authority and, if a report were received by the court to the effect that the handwriting on the three checks in question was not in their opinion the handwriting of defendant, such report would receive serious consideration by the court in its decision on defendant's motion for a new trial. Defendant's counsel promised to make arrangements for a handwriting analysis and a prompt report but has failed to do so although more than two months have elapsed since the date of argument. We believe it is not unfair to defendant to conclude that (1) no effort was made to obtain a handwriting report or (2) if the report has been obtained by defendant the result was unfavorable to him.

Defendant also says that the refusal of the court to grant a continuance prevented him from calling as a witness a Dr. Ripepi who would have testified that on June 3, 1964, or one month before the occurrences set forth in the indictments, defendant "had a slight limp and was instructed to use a cane." One of the Commonwealth's identification witnesses testified that although he did not notice a limp nevertheless the person whose check he cashed had a walk which was a "kind of a shuffle". Even though the other two identification witnesses noticed no limp we do not believe the testimony of the doctor would have been of any considerable weight since the doctor's testimony would have been that the limp was slight and the identification of the defendant by the three Commonwealth

witnesses was positive. Moreover, other defense witnesses did testify as to defendant's limp.

3. We think the sample signature of defendant on a membership card in the Moose Lodge was properly excluded. During the testimony of George Bellock, a witness who cashed one of the checks in question, the witness was asked on cross-examination to compare the signature appearing on a membership card in the Loyal Order of Moose and to say whether it was the same signature which he saw on the back of the check which he cashed. Commonwealth's objection to this testimony was sustained. A person who is not an expert handwriting witness is not competent to make a comparison between the disputed signature and the genuine signature and base an opinion thereon: Groff v. Groff, 209 Pa. 603. Moreover, defendant was permitted to sign his name in court and on cross-examination the witness said that the signatures were different. In addition, defendant's signatures on the bonds he gave to the magistrate for his appearance in court were available as admittedly genuine signatures. The witness was, of course, not a handwriting expert and hence not qualified to make a comparison of signatures: Act of May 15, 1895, P. L. 69, sec. 2, 28 PS §162. However, the Commonwealth made no objection on this ground and defendant was successful in getting this testimony on the record.

4. We find no error in the charge in respect to the credibility and accuracy of the Commonwealth's identification witnesses. Counsel calls attention to page 191 of the charge, which reads as follows:

". . . . then, finally, did the witness while on the witness stand seem to be positive of the identity of defendant or was he doubtful? And you ought to consider these factors, and any other ones that you think of, in passing not merely upon the credibility but on the accuracy of the witness's testimony. It would seem to

the court that probably the witnesses are telling the truth. Is their testimony accurate or, perhaps, is it mistaken? That's your problem here and you must be satisfied beyond a reasonable doubt of the defendant's guilt before you may convict, of course. You must be satisfied of his identity. . . ."

However, on page 190 the trial judge analyzed in detail the possibility of error in testimony regarding identification and later in the charge told the jury they should draw their own inferences from the testimony and should be guided by their own recollection. The effect of the charge was that it "seemed" to the trial judge that the identification witnesses were "probably" telling the truth but might be mistaken. However, it was also made clear to the jury that they should draw their own inferences from the testimony. No exception was taken to the charge except a general exception and exceptions to the court's denial of the defendant's points for charge. We are satisfied that the trial judge did not remove the issue of credibility from the consideration of the jury.

5. We are satisfied that no error was committed in permitting the Commonwealth to cross-examine defendant's alibi witness, Edward Zambo, as to two prior felony convictions for the purpose of impeaching his credibility: Commonwealth v. Jones, 334 Pa. 321; Commonwealth v. Butler, 405 Pa. 36; Commonwealth v. Negri, 414 Pa. 21. Defendant cites no cases holding that the felony convictions of Edward Zambo were too remote.

6. Defendant's final contention is that the verdict was against the weight of the evidence. Commonwealth's identification witnesses were positive of their identification of defendant on direct examination and were completely unshaken by a detailed cross-examination. While the identification witnesses were not con-

fronted with defendant for almost a year after the commission of the crimes, they did identify defendant's photographs shortly thereafter. Defendant suggests that in view of the testimony of defendant's witnesses to the effect that he made and uttered fraudulent instruments in Westmoreland County the same afternoon it was impossible for him to be guilty of these three crimes in Cambria County on the same date. Defendant was acquitted of the crimes with which he was charged in Westmoreland County. In order to press this defense in Cambria County it would seem that, at least for the purpose of argument, the defendant would be required to admit his guilt of the crimes with which he had been charged in Westmoreland County. None of the Commonwealth's witnesses were certain as to the time of day at which these checks were made and uttered. In respect to the check cashed at the A & P Market, the witness said that it was sometime between 4 p.m. and 6 p.m. In respect to the check cashed at the Thorofare Market, the witness said it was between 5 p.m. and 6 p.m. In respect to the check passed at the Acme Market, the witness said it was "around" 6 p.m.

The merchants from Westmoreland County who were called by the defendant testified that they cashed checks as follows:

Latrobe A & P, about 3:30; Greensburg Sears & Roebuck, 3:30 to 4; Ligonier Red and White Market, "around" 4; Skatel's Market at Latrobe, 4 to 4:30; Greensburg Lucky Food Center, from noon to 5; Ligonier A & P, from 4 to 5. Each of these 6 incidents in Westmoreland County could have been completed at 4:30 and, if the last check cashed was the one at the Ligonier A & P, defendant would have been only 18 miles from Johnstown at 4:30 p.m. and thus could well have committed the crimes in Johnstown between 5 and 5:30 p.m., or later, and then returned to Westmoreland County and cashed the check at the Jeanette

A & P Market between 6 and 7 p.m., as the witness from that market testified.

We believe the case was clearly one for the jury and that defendant was not prejudiced by trial errors.

We, therefore, enter the following

### DECREE

And now, November 2, 1964, after argument and upon due consideration, defendant's motion for new trial and in arrest of judgment in the above entitled cases are dismissed and defendant is directed to appear for sentence at a time to be fixed by the district attorney of Cambria County.